**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JOHN ANIGBOGU,

    *Plaintiff*,

  v.

MIDLAND CREDIT MANAGEMENT, INC.,
et al.,

    *Defendants*.

No. 23-cv-21732 (MEF)(CLW)

**OPINION and ORDER**

**Table of Contents**

**I.**  **General Principles**
**II.** **The FDCPA Claim**
**III.** **The FCRA Claim**
   **A.** **The First Theory**
   **B.** **The Second Theory**
      **1.** **A Possible Complexity**
      **2.** **The Resolution**
**IV.** **Conclusion**

\* \* \*

John Anigbogu (the "Plaintiff") has pressed claims under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") against Experian Information Solutions, Inc. (the "Defendant"). See Complaint at 3.

The Defendant now moves to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). See Motion to Dismiss at 1.

The motion is granted.

**I.** **General Principles**

The Plaintiff is not represented by a lawyer, so his Complaint

1

must be "liberally construe[d]."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013).  This said, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  Id. at 245.

The "sufficient facts" obligation means that a plaintiff must put forward allegations that together add up to a "plausible" claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] formulaic recitation of the elements of a cause of action will not do."  Id.  This is because allegations that just restate legal elements do not count.  They must be put to one side, and the Court must then assess the factual allegations that are left behind.  See id. at 678, 687; see also Badalamenti v. Resideo Techs., Inc., 2024 WL 4661010, at *2 (D.N.J. Nov. 4, 2024).

## II. The FDCPA Claim

With the above principles in mind, look first to the Plaintiff's FDCPA claim.

"To prevail on an FDCPA claim, a plaintiff must" allege that "the defendant is a debt collector."  Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014); accord Tepper v. Amos Fin., LLC, 898 F.3d 364, 366 (3d Cir. 2018).

But the Plaintiff has not made that allegation.  See Complaint at 2-3.

The FDCPA claim therefore cannot go forward.  See Anigbogu v. Midland Credit Mgmt., 2025 WL 99581, at *1 (D.N.J. Jan. 15, 2025) (collecting cases).

## III. The FCRA Claim

Turn now to the Plaintiff's FCRA claim.  This claim seems to rest on two distinct legal theories.  Take these one at a time.

### A. The First Theory

The Plaintiff's first FCRA theory: a "[f]ailure [by the Defendant] to produce evidence of verification from the original creditor regarding the legitimacy and accuracy of [the relevant] alleged debt."  Complaint at 3.

This appears to rest on 15 U.S.C. § 1681i(a), a section of the FCRA that requires credit-reporting agencies to "promptly reinvestigate any information in a consumer's file that is disputed by a consumer."  Cortez v. Trans Union, LLC, 617 F.3d

2

688, 712 (3d Cir. 2010). "To fulfill its obligation under § 1681i(a)[,] a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (cleaned up).

But a "plaintiff must show an inaccuracy to proceed under . . . § 1681i(a)." Bibbs v. Trans Union LLC, 43 F.4th 331, 344-45 (3d Cir. 2022).

And here, the Plaintiff has not done so.

The Plaintiff alleges that there is not "evidence of . . . accuracy." See Complaint at 3.

This statement relates to part of the legal standard ("[in]accuracy") in this area. But it includes no information as to the alleged facts that might show that the standard has been met.

That is not enough.

A plaintiff's assertion that he has arrived at the end-of-the-line destination required by the law does not count. Rather, a plaintiff must set out allegations that plausibly explain how he got there. See, e.g., Badalamenti, 2024 WL 4661010, at *2.

To see the point, look, for example, to Williams v. Experian Information Solutions, Inc., 2024 WL 3439776 (3d Cir. July 17, 2024). There, a pro se plaintiff sued for violations of the FCRA. He alleged that the defendant reported "inaccurate" information. See id. at *1. The court of appeals held his allegations were conclusory and failed to state a claim. See id. Even the complaint's most specific allegation --- that "the inaccurate information includes a credit card account from [a credit union] that represented a balance and a late payment" --- "did not allege how or why that information was inaccurate or how [the defendant] should have reported it." Id.; see also id. at *1 n.2.

And other cases point in the same direction: failure to plausibly allege an inaccuracy prevents a § 1681i(a) claim from going forward, see Anigbogu, 2025 WL 99581, at *2 (collecting cases), and that is where things stand here.

### B. The Second Theory

The Plaintiff also has another theory as to how the Defendant

3

violated the FCRA.

Namely, the Plaintiff alleges the Defendant furnished a consumer report on him without first getting his "written instruction." See Complaint at 2. This, it is said, suggests a violation of the statute, presumably § 1681b. See id. at 3; see generally TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001).

### 1.  **A Possible Complexity**

In thinking through the above-described FCRA theory, there is a difficulty.

The stepping-off point for it: a credit-reporting agency does not always seem to need a person's "written instruction" before sending off a report on that person.

An agency, for example, can provide a report to a potential investor who wants to "determine if [a person's] debt [is] a suitable investment." Daniel v. Equable Ascent Fin., LLC, 2015 WL 10739402, at *1 (6th Cir. Sept. 16, 2015) (citing 15 U.S.C. § 1681b(a)(3)(E)). And some courts have held this does not require the debtor's involvement or permission. See, e.g., Tatro v. Equifax Info. Servs., LLC, 2019 WL 3253785, at *2 (D.R.I. July 19, 2019).

And another example. Some courts have held that an agency can convey a credit report "without the consumer's consent or knowledge" for certain offers to sell insurance to the customer. See Tucker v. New Rogers Pontiac, Inc., 2003 WL 22078297, at *2-3 (N.D. Ill. Sept. 9, 2003) (citing 15 U.S.C. § 1681b(c)(1)); see also Scharpf v. AIG Mktg., Inc., 242 F. Supp. 2d 455, 461 (W.D. Ky. 2003) ("the FCRA seems to contemplate that a company may obtain a consumer report without the consumer's application or knowledge, if it provides a firm offer"); Gamble v. Citifinancial and Landers, 2002 WL 31643028, at *2 (D. Conn. Nov. 19, 2002) ("Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the consumer."); cf. Nayab v. Cap. One Bank (USA), N.A., 942 F.3d 480, 488–89 (9th Cir. 2019) (describing certain arguably relevant legislative history).[1]

Against this backdrop, some courts have dismissed FCRA

---

[1] The cited cases are about obtaining a credit report, not furnishing one. But § 1681b likely governs both. See Cole v. U.S. Cap., 389 F.3d 719, 731 n.14 (7th Cir. 2004).

complaints under Rule 12(b)(6) where a plaintiff, as here, alleges only that he or she has not provided "written instruction" to the credit-reporting agency.  See, e.g., DeBose v. Experian Info. Sols., 2021 WL 9598214, at *1 (M.D. Fla. Apr. 1, 2021), report and recommendation adopted sub nom. DeBose v. Experian Info. Sols., Inc., 2021 WL 9598206 (M.D. Fla. Apr. 20, 2021) ("the plaintiff's bald assertion that the defendant wrongly disclosed his consumer report because the defendant did not have written instructions from the plaintiff to do so does not state a violation of the FCRA"); Green v. Experian, 2023 WL 6296923, at *4 (E.D. Pa. Sept. 27, 2023); Obarski v. Associated Recovery Sys., 2014 WL 2119739, at *2 (D.N.J. May 20, 2014); see also Cruel v. Experian, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023).

After all, the argument goes, a credit-reporting agency may not have had one of the various lawful reasons to provide a report (a "written instruction[]," 15 U.S.C. § 1681b(a)(2)) but may well have had another valid reason (like the ones laid out above).  See DeBose, 2021 WL 9598214, at *1; Green, 2023 WL 6296923, at *4; Obarski, 2014 WL 2119739, at *2.

Is this generally the right approach?  Maybe, maybe not.

Should a plaintiff, who typically has not had discovery when he files his complaint, be required to come forward with a factual allegation that knocks out every possible lawful basis for the credit-reporting agency to issue a report?  Or must a plaintiff plausibly allege a violation of the statute on one theory (like no "written instruction"), and then it is over to the agency to later try to establish that it actually had a permissible reason for furnishing a report?  Cf. Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 49 (2d Cir. 1997) (alluding to similar points); Nayab, 942 F.3d 480 (same); but see id. at 499 (Rawlinson, J., dissenting in relevant part).

The Third Circuit has not spoken directly to these questions.

It has, though, considered an arguably similar issue in an FDCPA case, Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355 (3d Cir. 2015).

There, the Third Circuit laid out a set of factors that help determine which party bears "the burdens of pleading."  See id. at 361, 364 n.11 (cleaned up).

One of these factors is "whether a party is in particular control of information necessary to prove or disprove the

5

defense." Id. at 361; see also id. at 365-66.

And as noted above, there appear to be a number of circumstances in which only the credit-reporting agency (and not the plaintiff-consumer) can realistically be expected to have in hand the basic information as to why it issued a particular report.

Therefore, the Third Circuit's decision in Evankavitch may weigh in favor of cabining the pleading burden that must be borne by plaintiffs/consumers.[2]

## 2. The Resolution

Given the complexities sketched out above, the Court will not now close on what Evankavitch may or may not require.

The reason: there is a more straightforward way to resolve the relevant issue.

Namely, the Plaintiff here pleads that a credit report "disqualified [him] from obtaining [a] mortgage [l]oan for refinancing." See Complaint at 3. That makes it clear that a report was furnished in connection with the Plaintiff's efforts

---

[2] How might this work? One possibility: a plaintiff might have the burden only as to what she can be expected to know as a practical matter --- whether she gave "written instruction" to a credit-reporting agency, for example, and maybe some other things, too. Cf. Nayab, 942 F.3d at 496 (the plaintiff "put[] forward factual assertions which negative each permissible purpose . . . for which [the plaintiff] could possibly have personal knowledge"); Northrop, 134 F.3d at 46. Such an approach may be in step with the part of Evankavitch quoted above, and it would allow a plaintiff to get past a motion to dismiss without having to allege the sorts of things that might be especially hard for her to know without discovery. Apart from Evankavitch, such an approach might fit with more general Third Circuit principles as to how to proceed in the face of the sort of information asymmetries that may be a recurring feature in the FCRA context. See, e.g., Prestan Prods. LLC v. Innosonian Am., LLC, 2024 WL 278985, at *5 n.17 (D.N.J. Jan. 25, 2024) (noting that the Third Circuit had set an especially low bar for getting past a motion to dismiss and into jurisdictional discovery --- because it otherwise might be difficult for plaintiffs to gather basic, potentially jurisdiction-conferring facts about the connection between a forum state and a defendant).

6

to get a mortgage.

Under the FCRA, mortgage financing is a "credit transaction." See Olvera v. MH Consultants, Inc., 2024 WL 3049848, at *2 (N.D. Tex. June 18, 2024); Fjeld v. JPMorgan Chase Bank, N.A., 2014 WL 12599403, at *3 (S.D. Tex. Feb. 11, 2014); see also Persinger v. Sw. Credit Sys., L.P., 20 F.4th 1184, 1195 n.5 (7th Cir. 2021) (defining "credit transaction" under the FCRA).

And the statute allows a credit-reporting agency to furnish a report "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A); see also Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011).

Therefore, rather than pleading an impermissible purpose, the Plaintiff's Complaint affirmatively suggests that the credit-reporting agency had a permissible one.

Accordingly, and in the absence of allegations that push in the other direction, the Complaint does not raise any plausible inference that the Defendant violated the FCRA.

## IV.   Conclusion

In sum, the Plaintiff has not plausibly alleged a violation by the Defendant of either the FDCPA or the FCRA. These claims must therefore be dismissed.

A final note.

In his opposition to the motion to dismiss, the Plaintiff has laid out some additional factual details and also attached various exhibits.

But a "complaint may not be amended by the briefs in opposition to a motion to dismiss." Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). And the Third Circuit has held that this rule generally holds even when, as here, the Plaintiff is not represented by a lawyer. See McArdle v. Tronetti, 961 F.2d 1083, 1089 (3d Cir. 1992); see also Tice v. Winslow Twp. Police, 2014 WL 3446611, at *2 (D.N.J. July 11, 2014).

If the Plaintiff wishes to file an amended complaint that adds

more detailed allegations as to the Defendant, he may do so subject to the scheduling order the Court will enter today.

\*   \*   \*

The Plaintiff's FDCPA and FCRA claims against Experian Information Solutions, Inc., are dismissed without prejudice.

IT IS on this 16th day of January, 2025, **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.